MICHAEL KLISCH, ESQ.
D.C. Bar No.: 429711
VA Bar No.: 32074
*Pro Hac Vice Application Forthcoming*
mklisch@cooley.com
NATALIE PIKE, ESQ.
VA Bar No.: 94944
*Pro Hac Vice Application Forthcoming*
npike@cooley.com
1299 Pennsylvania Ave., Ste. 700
Washington, DC 20004-2400
BRANDON MCLAUGHLIN, ESQ.
MA Bar No. 705646
*Pro Hac Vice Application Forthcoming*
bmclaughlin@cooley.com
**COOLEY LLP**
500 Boylston Street, 14th Floor
Boston, MA  02116-3736
(617) 937-2300
Fax (617) 937-2400

STEVEN T. JAFFE, ESQ.
Nevada Bar No. 7035
sjaffe@lawhjc.com
TAYLOR R. ANDERSON, ESQ.
Nevada Bar No. 15136C
tanderson@lawhjc.com
**HALL JAFFE & CLAYTON, LLP**
7425 Peak Drive
Las Vegas, Nevada 89128
(702) 316-4111
Fax (702) 316-4114

*Attorneys for Intervenor IQVIA, Ltd.*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re Application of CARDIORENTIS AG for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings | CASE NO.  2:21-cv-00554-RFB-DJA<br><br>**REPLY IN SUPPORT OF IQVIA's MOTION TO INTERVENE FOR A PROTECTIVE ORDER AND TO QUASH THE SUBPOENA TO DENNIS GILLINGS** |

    IQVIA, Ltd. ("IQVIA") hereby respectfully submits this Reply in Support of its

Motion to Intervene for a Protective Order and to Quash the third-party subpoena

1

1  ("Subpoena") issued from this Court to Dennis Gillings pursuant to 28 U.S.C. § 1782(a) for use in a foreign proceeding (*i.e.*, the Commercial Court (Queen's Bench Division of the High Court) ("High Court") in London, England ("U.K. Action")) filed by Cardiorentis AG ("Cardiorentis"), a party in the U.K. Action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**I.   Mr. Gillings has not been properly served.**

Cardiorentis argues (ECF No. 23, "Opp.") that "Gillings was served with process by a process server on September 27, 2021, as set out in the Affidavit of Service Cardiorentis ("Affidavit") filed at 10:57 a.m. on Friday October 1, 2021." Opp. at 5. But the Affidavit states only that a "Concierge escorted Server up to penthouse and was told to leave documents on table outside door." ECF No. 18. This is not proper service under Fed. R. Civ. P. 45(b) because the majority rule in the 9th Circuit is that the Federal Rules require *personal service*. *See* Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person . . . ."); *Union Pac. R.R. Co. v. Advance Polybag Nev.*, 2018 U.S. Dist. LEXIS 238767, at *4 (D. Nev. May 4, 2018) ("[T]he longstanding interpretation of Rule 45 has been that personal service of subpoenas is required.") (internal citations omitted). Merely leaving the subpoena outside Mr. Gillings's door, but not serving it personally to him, is therefore not proper service. *See Casun Inv., A.G. v. Ponder*, 2019 WL 2358390, at *2 (D. Nev. June 4, 2019) (subpoena left at a person's property, but not served personally, was not properly served); *Kwon v. Benedetti*, 2011 WL 4072085, at *10 (D. Nev. Sept. 12, 2011) (no service where process server left subpoena with security guard); *Prescott v. Cty. of Stanislaus*, 2012 WL 10617, at *4 (E.D. Cal. Jan. 3, 2012) (no service when "the sole attempt at serving him personally failed merely because he was not at home when the process server attempted service there.").[1]

---

[1] To try and get around this defect, Cardiorentis argues that "IQVIA does not even have standing to contest service on Gillings." ECF 23 at 5. This too is irrelevant because it does not cure the plainly defective service, evident facially from the Affidavit filed with the Court.

2

In sum, this Court should defer this matter until Cardiorentis effectuates service. If and when that occurs, it should then set a briefing schedule for Mr. Gillings to respond to the subpoena

## II. Mr. Gillings is protected from a deposition by the apex doctrine.

### a. Mr. Gillings does not have any personal relevant knowledge.

Cardiorentis argues that "IQVIA claims that Gillings does not have relevant knowledge, but since IQVIA's lawyers do not represent him, they are not in a position to know that, nor have they presented any evidence of Gillings's supposed lack of knowledge to the Court." Opp. at 6. Cardiorentis is correct that Cooley does not represent Gillings and has had no communication with him. Cardiorentis is wrong, however, about what IQVIA knows (or does not know) about Mr. Gillings's knowledge about facts relevant to the U.K. Action.

To start, IQVIA has been litigating this case for over three years now, during which hundreds of thousands of documents have been produced and hundreds of pages of witness statements have been submitted as direct testimony in the trial. Indeed, IQVIA alone has submitted 16 witness statements (constituting hundreds of pages) in the U.K. Action. Thus, it strains credulity to suggest that, on the eve of trial, IQVIA does not know whether a long-retired former executive (2015) has unique personal knowledge of relevant facts, or whether Cardiorentis has exhausted other sources to discover it. That is why IQVIA's Motion *does* outline evidence which shows that Mr. Gillings was not intimately involved in the innerworkings the Ularitide clinical trial.

For example, although the parties produced hundreds of thousands of documents, Mr. Gillings is a party to only *one*.[2] Mot. at 2, 8 n.2. That is why Cardiorentis *never* identified Mr. Gillings as one of the 23 most important custodians. Thus, the Court has been presented with plenty of evidence that suggests that Mr. Gillings is *not* a relevant witness in the U.K. Action. Importantly, more evidence will likely come from Mr. Gillings after he has been served and

---

[2] Cardiorentis splits hairs by claiming that the one document is actually an email chain with more than one email. This is a distinction without a difference, and does not change the point—that is, he appears on a single document out of hundreds of thousands produced, and which concerns only one discrete conversation.

responds to the subpoena. Accordingly, before ruling, the Court should wait to hear from Mr. Gillings—if it is not already convinced that Cardiorentis has not satisfied the apex doctrine requirements.

            **b. Cardiorentis's apex arguments are wholly unpersuasive.**

Cardiorentis argues that the "documents prove that Gillings has knowledge directly relevant to Cardiorentis' action, which cannot be obtained from other individual," (Opp. at 6), yet it cites only *one* document to which Mr. Gillings is a party. But even a cursory review of this email exchange shows that Cardiorentis is wrong and has mischaracterized the contents.

In this email thread, Mr. Gillings outlines extensively what occurred during a single meeting with Cardiorentis's former CEO, Elmar Schnee ("Schnee") to other members of the IQVIA team. *See* Second Sciannaca Decl. Ex. C. In other words, Mr. Gillings simply passed along what Schnee said to him. Thus, Mr. Gillings's knowledge here is hardly "unique", as (a) this email was addressed and discussed in the witness statement submitted to this Court made by Jeffrey Spaeder (*See* ECF No. 19-3 at 13) and (b) Schnee, Cardiorentis's former CEO, possesses the same knowledge.

Cardiorentis tries to deal with this problem by arguing that "[n]o one else at *IQVIA* can testify as to what Mr. Gillings discussed with Cardiorentis at that meeting." Opp. at 6 (emphasis added). But this ignores that *Schnee* could have done that—and Cardiorentis chose to not put forward a witness statement from him in the U.K. Action (only further belying any argument regarding the importance of this conversation to Cardiorentis's case). It also disregards that Mr. Spaeder's witness statement discusses the contents of this document.

Nor is Cardiorentis's argument that it is "entitled to discover what if anything Mr. Gillings did to address the concerns Cardiorentis' CEO raised with him at their meeting" availing. *See* Opp. at 7. There are numerous IQVIA witnesses in the U.K. Action (including Mr. Spaeder) that are providing testimony about IQVIA's response to these concerns—indeed, that is one of the primary focuses of the upcoming trial.

Finally, Cardiorentis confirms that, in considering the apex doctrine, courts consider "whether the party seeking the information has exhausted other less intrusive discovery

4

methods." Opp. at 6 (citing *Int'l Game Tech. v. Ill. Nat'l Ins. Co.*, 2018 WL 7499823, at *2 (D. Nev. Apr. 6, 2018). Nonetheless, neither Cardiorentis's application, nor its Opposition, even attempts to address how this information was sought from other sources before trying to improperly depose an apex executive. This alone is grounds to quash the subpoena. Mot. at 12 (citing *Rembrandt Diagnostics, LP v. Innovacon, Inc.*, 2018 WL 692259, at *6 (S.D. Cal. Feb. 2, 2018)).

In sum, Cardiorentis has not shown that Mr. Gillings has any unique, personal knowledge relevant to the U.K. Action or that it exhausted other sources for any such information.

### c. The apex doctrine applies to former executives.

Cardiorentis opines that, because Mr. Gillings is a former executive, the same tenants of the apex doctrine do not apply. Opp. at 7. This is a frivolous argument rejected by numerous cases. *E.g. Conforto v. Mabus*, 2014 WL 12560881, at *7 (S.D. Cal. Sept. 24, 2014) ("Executives and high-ranking officials continue to be protected by the apex doctrine even after leaving office.") (citing *K.C.R. v. County of Los Angeles*, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014); *Robertson v. McNeil-PPC Inc.*, 2014 WL 1257817 (C.D. Cal. Jan. 13. 2014) ("Courts have found that former executives . . . are covered by the apex doctrine."); *Moyle v. Liberty Mut. Retirement Ben. Plan*, 2012 WL 5373421 (S.D. Cal. Oct. 30, 2012) ("Former executives, however, are within the scope of the apex doctrine."). Cardiorentis's brief even admits as much. Opp. at 7 (noting "While the apex doctrine applies to former executives…."). These are sensible rules because former apex executives clearly deserve the same protection from harassment they had during their employment.

Cardiorentis asserts that nevertheless, "the rationale behind the doctrine has diminished import in such a context." *Id.* But here it ignores entirely the arguments IQVIA makes about these types of depositions having "tremendous potential for abuse or harassment," especially in the context of a trial starting in under two weeks. Mot. at 11-12. And again, the Court is without the full context for the potential burden this deposition would place on Mr. Gillings without hearing from him directly.

**III.    The Subpoena Subverts English and North Carolina Supreme Court Orders.**

Cardiorentis argues that "the North Carolina ruling was not based on 'forum shopping,' but rather the traditional elements of the *forum non conveniens* doctrine . . . ." Opp. at 5.  But this argument is misguided because, while there were other reasons for the dismissal, forum shopping alone is a proper consideration for a District Court when ruling on Section 1782 discovery.  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *4 (N.D. Cal. Jan. 17, 2013).  Thus, this Court can, and should, consider that Cardiorentis's Application flies in the face of the North Carolina Supreme Court's order to litigate this case abroad.  *See Kulzer v. Biomet, Inc.*, 2009 WL 3642746, at *6 (N.D. Ind. Oct. 29, 2009) (Section 1782 should not be used by foreign parties to "forum shop whenever the procedures of their home tribunal are less favorable to their case.")

Cardiorentis also claims that, as it pertains to the U.K Action Order limiting discovery to certain custodians, "[n]othing in the order restricts or even addresses the parties' ability to obtain and use documents or other evidence from non-parties such as Gillings through § 1782 proceedings." Opp. at 8.  But this ignores that Mr. Gillings was a former employee of IQVIA, and that while nominally a non-party, there were ten former employees, like Mr. Gillings, who were included among the list of 23 individuals.  Mot. at 12-13.  In sum, the Order *does* govern former employees like Mr. Gillings.[3]  And even assuming the Order does not apply to Mr. Gillings's discovery (it does), Cardiorentis disregarded English procedure for obtaining non-party evidence; *i.e.*, it did not submit an application to High Court, a necessary requirement.  Mot. at 13.[4]

---

[3] Cardiorentis's argument that the Order only applies to documents is only true because pre-trial depositions are not permitted under English law and procedure.  That is, there would not be a need for the Order to govern the testimony sought here, because it is not permissible under English law.

[4] While there is no "exhaustion" requirement for Section 1782 applications, such that a party must seek the discovery abroad before seeking it in the U.S., failing to do so weighs against Section 1782 discovery.  *In re Appl. of Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011) ("Although the court is not required to evaluate whether discovery requests in a § 1782 application 'comply with the foreign country's discovery laws,' the court 'must' consider whether 'the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules.'") (citation omitted).

6

**CONCLUSION**

For the foregoing reasons, IQVIA respectfully requests this Court to grant its Motion to Intervene and Quash the Subpoena and enter a Protective Order preventing Mr. Gillings's deposition, or permit adequate time for Mr. Gillings to respond after he has been properly served.

Respectfully submitted, this the 7th day of October, 2021.

/s/ *Steven T. Jaffe*
STEVEN T. JAFFE, ESQ.
Nevada Bar No. 7035
sjaffe@lawhjc.com
TAYLOR R. ANDERSON, ESQ.
Nevada Bar No. 15136C
tanderson@lawhjc.com
**HALL JAFFE & CLAYTON, LLP**
7425 Peak Drive
Las Vegas, Nevada 89128
(702) 316-4111
Fax (702) 316-4114

MICHAEL KLISCH, ESQ.
D.C. Bar No.: 429711
VA Bar No.: 32074
*Pro Hac Vice Application Forthcoming*
mklisch@cooley.com
NATALIE PIKE, ESQ.
VA Bar No.: 94944
*Pro Hac Vice Application Forthcoming*
npike@cooley.com
1299 Pennsylvania Ave., Ste. 700
Washington, DC 20004-2400
BRANDON MCLAUGHLIN, ESQ.
MA Bar No. 705646
*Pro Hac Vice Application Forthcoming*
bmclaughlin@cooley.com
**COOLEY LLP**
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300
Fax (617) 937-2400

*Attorneys for IQVIA, Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing REPLY IN SUPPORT OF MOTION TO INTERVENE FOR A PROTECTIVE ORDER AND TO QUASH SUBPOENA was filed with the District of Nevada, and copies were electronically served on all parties to this action through the Court's CM/ECF system:

>D. Neal Tomlinson
>BROWNSTEIN HYATT FARBER SCHRECK, LLP
>100 North City Parkway, Suite 1600
>Las Vegas, NV 89106-4614
>ntomlinson@bhfs.com
>
>Dennis H. Tracey, III
>David R. Michaeli
>HOGAN LOVELLS US LLP
>390 Madison Avenue
>New York, New York 10017
>dennis.tracey@hoganlovells.com
>david.michaeli@hoganlovells.com

This the 7th day of October, 2021.

/s/ *Marianne Sylva*